# EXHIBIT A

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement made as of this 18th day of April, 2006 (the "Effective Date") by and between Jupiterimages Corporation ("JUPITERIMAGES"), having its principal place of business at 23 Old Kings Highway South, Darien, Connecticut 06820, and Steve Shapiro Music ("Company"), and Steve Shapiro (collectively the "Sellers"), having its principal place of business at 357 Tehama Street, San Francisco, CA 94103 (hereafter "Sellers").

### BACKGROUND:

1.   WHEREAS, JUPITERIMAGES publishes digital content and licenses the rights in such content to end-users;

2.   WHEREAS, Sellers have created and own a collection of music, music rights, production elements and sound effects published and licensed through the stevemusic.com Web Site, CDs, or through third party distributors and other licenses and known as the Steve Shapiro Online Music Library (the "Business"), and

3.   WHEREAS, JUPITERIMAGES wishes to purchase and Sellers wish to sell the assets of the Business.

NOW THEREFORE, in consideration of the mutual promises, covenants and obligations contained herein, the parties agree as follows:

### 1.    INTERPRETATION

1.1    Definitions. As used herein:

"Agreement" means this Asset Purchase Agreement, including any schedules or exhibits attached hereto.

"Acquired Assets" has the meaning as set out in Section 2.1.

"Assumed Liabilities" has the meaning as set out in Section 2.2(b).

"Confidential Information" has the meaning as set out in Section 7.1.

"Employees" has the meaning as set out in Section 2.3.

"Effective Date" has the meaning as set out in the introductory paragraph.

"Music" means the 2,225 original musical compositions and 2,225 master sound recordings, as listed and described in Exhibit "A" attached hereto.

"Intellectual Property Rights" means all copyright, trademark, patent, database, trade secret, domain name, right of publicity and other intellectual property rights or interests, including without limitation, all applications, registrations, related goodwill, rights to register or apply for registration, renewals, reversions, all waivers and assignments of moral rights, all assignments of releases, all assignments of any "work for hire" agreements and all rights to enforce such rights or interests, in any work, including without limitation, the structure, sequence and organization of the same, worldwide and in perpetuity.

"Web Site" the Internet Web Site located at stevemusic.com with the home page as of 4/18, 2006 shown as Exhibit B.

1.2    Exhibits and Schedules. The following Schedules are appended to and form part of this Agreement:

| Exhibit "A" | List of Music |
| Exhibit "B" | Web Site Home Page |
| Exhibit "C" | List of Acquired Assets |

2.   **PURCHASE**

2.1   <u>Transfer and Assignment</u>. Sellers hereby convey, sell, assign and transfer in perpetuity, the entire worldwide, right, title and interest, in and to all of the assets of the Business: including, without limitation, the Music (in all formats and series); music rights (including, without limitation, production rights, publishing rights, broadcast rights, composer rights and synchronization rights); prepaid royalties/expenses; all content; Intellectual Property Rights; supplier, producer, and distributor agreements; license and other agreements; customer lists; e-mail subscriber lists and databases; compact disks; releases; all of the foregoing including, without limitation, as listed on Exhibit C (the "Acquired Assets").

2.2   <u>Liabilities.</u>

    (a) JUPITERIMAGES shall only assume the agreements and obligations to be performed after the date of this Agreement and listed on Exhibit C (the "Assumed Liabilities").

    (b) Other than the Assumed Liabilities, JUPITERIMAGES shall not assume any other liabilities of the Business or the Acquired Assets for any periods prior to the date of this Agreement (the "Excluded Liabilities").

2.3   <u>Moral Rights</u>. Without limiting the generality of Section 2.1, to the extent permitted by law, Sellers do hereby assign to JUPITERIMAGES, the benefit of all waivers of moral rights in the Music including the right to restrain or claim damages for any distortion, mutilation, or other modification of the Music or any part thereof whatsoever, and the right to restrain use or reproduction of the Music in connection with any product or service.

2.4   <u>Delivery</u>. Upon execution of this Agreement, Sellers shall deliver:

    (a) the Music and Acquired Assets to JUPITERIMAGES in a form reasonably acceptable to JUPITERIMAGES;

    (b) copies of all (i) applicable releases related to the Music and (ii) "work for hire" agreements and assignments related to the Music. If copies of the releases and assignments are not provided, Sellers agree to fully indemnify and hold JUPITERIMAGES harmless from, and against, any and all claims related to such matters.

3.   **PURCHASE PRICE**

3.1   <u>Payment</u>. The purchase price payable to Sellers for the Business shall be five hundred and fifty-six thousand, two hundred and fifty dollars ($556,250) ($250 per musical composition) (the "Purchase Price") payable by JUPITERIMAGES as follows: (i) two hundred and seventy-eight thousand, one hundred and twenty-five dollars ($278,125) of the Purchase Price by wire transfer upon execution of this Agreement and successful transfer of all of the Acquired Assets to JUPITERIMAGES including, but not limited to, all Music, databases and customer lists. Two hundred and seventy-eight thousand, one hundred and twenty-five dollars ($278,125) shall be held by JUPITERIMAGES in an interest-bearing escrow account (the "Escrow") for the benefit of Sellers. The Escrow shall be used to fund indemnification obligations, if any, of Sellers for a period of twelve (12) months from the execution of this Agreement. Fifty percent (50%) of the Escrow, less escrow claims, shall be paid to Sellers within forty-five (45) days of the six month anniversary of the execution of this Agreement. The remaining fifty percent (50%) of the Escrow, less escrow claims, shall be paid to Sellers on the day of the first anniversary of the execution of this Agreement.

3.2   <u>Currency</u> All payments to Sellers pursuant to this Agreement shall be made in the lawful currency of the United States and all amounts referred to in this Agreement are in the lawful currency of the United States.

4.   **WARRANTY/COVENANT**

2

4.1    Sellers represent, warrant, and covenant that:

    (a) Sellers are the sole creator, composer, publisher and owner of the Music and Acquired Assets and that they have every right to enter in this Agreement and sell the Music and transfer the rights herein;

    (b) except as expressly set forth on Exhibit C, Sellers have made no commitment, agreement or understanding verbally, or in writing, with any other party for the use, ownership or license of the Music or Acquired Assets, in any manner, after the date of this Agreement;

    (c) to the best of Sellers' knowledge, the Music and assets do not infringe, and Sellers have received no notice of any potential infringement, upon any statutory or common law copyright, trademark, contractual, proprietary right, right of publicity or privacy, or any other right of any other person or entity;

    (d) to the best of Sellers' knowledge, at all times the Music has been used distributed and licensed in full compliance with all applicable laws;

    (e) the Music and Acquired Assets are free and clear of all liens, encumbrances, security interests, restrictions or claims of any kind or nature;

    (f) Sellers have all power and authority to enter into this Agreement and to comply with its terms;

    (g) to the best of Sellers' knowledge, the Music and Acquired Assets do not contain any content or item which is libelous of another, defamatory, malicious, or that contains any viruses and Sellers have received no notice and have no knowledge of any claim of libelous, defamatory, malicious or virus content related to the foregoing;

    (h) there is no action, suit, proceeding or investigation pending or, to the best of the Sellers' knowledge, threatened, which could have an adverse effect on the publishing, distributing, downloading, prospects, earnings, ownership or condition (financial or otherwise) of the Music, Acquired Assets or Business;

    (i) no representation or warranty of Sellers in this Agreement contains any misleading or untrue statement of material fact or omits to state a material fact;

    (j) Sellers shall not keep any copies of the Music or Acquired Assets, nor make any use of the Music or Acquired Assets after the date of this Agreement;

    (k) the Business does not pay any royalties, commissions or fees in connection with the Music to any third party except as listed on Exhibit C; and

    (l) Sellers each agree that they shall not be entitled to any royalties or other similar payments with respect to the Music or Acquired Assets upon, or following, execution of this Agreement or any subsequent use or licensing of the Music.

    (m) Sellers shall continue to operate the Web Site and host the Music, without cost to JUPITERIMAGES, for a period of at least 120 days.

    (n) Sellers shall promptly pay to JUPITERIMAGES any payments received by Sellers for the license of the Music after the date of this Agreement.

    (o) Sellers shall maintain a link on the stevemusic.com Web site for a period of twelve months directing anyone looking to download music clips to a JUPITERIMAGES Web site, as directed by JUPITERIMAGES.

    (p) For a period of twenty-four months (24) following the date of this Agreement, Seller shall not, directly or indirectly, (i) sell or license any music tracks on the stevemusic.com Web site for download, subscription, cd, dvd, or otherwise, (ii) participate in, engage in, or operate the development, distribution, operation, licensing, marketing or sale of any online Internet Web site for the download of royalty free music. Notwithstanding the foregoing, Sellers can produce music tracks for third parties for a fee.

## 5.    INDEMNITY

5.1    Sellers agree to fully defend, indemnify and hold JUPITERIMAGES and its parent, subsidiaries, officers, directors, employees and affiliates harmless from, and against, any and all costs, damages, expenses, liabilities, and other claims, including attorneys' fees and court costs, that are in any way connected to

3

Sellers' breach of any term of this Agreement.

6.    LIMITATION OF LIABILITY

6.1    Limitation of Liability. EXCEPT FOR FRAUD OR WILLFUL MISCONDUCT BY A PARTY, IN NO EVENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, OR SPECIAL DAMAGES RELATING TO THE IMAGES, INCLUDING, WITHOUT LIMITATION, ANY BUSINESS INTERRUPTION, LOSS OF GOODWILL, LOST PROFITS OR LOST SAVINGS.

7.    CONFIDENTIALITY

7.1    Confidentiality. Each of the parties hereto agrees to keep confidential any and all information with respect to the other party, including without limitation, information relating to data, technology, business, financial affairs, and operations of the other party and the terms of this Agreement ("Confidential Information") which it has received and which is not otherwise available to the general public without restriction. Notwithstanding the foregoing, each of the parties shall be entitled to disclose such Confidential Information (i) to its agents, employees or representatives who have a need to know such Confidential Information and are bound by obligations to maintain the confidentiality of such information, for the purpose of performance under this Agreement and exercising the rights granted under this Agreement, or (ii) to the extent required by applicable law, or (iii) during the course of or in connection with any litigation, arbitration or other proceeding based upon or in connection with the subject matter of this Agreement, provided that the party wishing or required to disclose such Confidential Information shall give the other reasonable notice prior to such disclosure and shall comply with any applicable protective order or equivalent. Confidential Information shall not include that information defined as Confidential Information above which the receiving party can conclusively establish: (i) was in the possession of the receiving party at the time of disclosure; (ii) prior to or after the time of disclosure became part of the public domain without the act or omission of the party to whom it was disclosed; (iii) was disclosed to the receiving party by a third party under no legal obligation to maintain the confidentiality of such information; or (iv) was independently developed by the receiving party.

8.    GENERAL

8.1    Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the United States of America and the state of New York, without regard to the conflicts of law principles. If either party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees. Each party waives any right, and agrees not to apply to have any disputes under this Agreement tried or otherwise determined by a jury, except where required by law.

8.2    Enforceability. If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provisions or part thereof which is necessary to render the provision valid, legal and enforceable, shall be revised or, if necessary, severed from the Agreement and the other provisions and the remaining part thereof of that provision shall remain in full force and effect.

8.3    Further Assurances. The parties agree to do all such things and to execute such further documents as may reasonably be required to give full effect to this Agreement.

8.4    Entire Agreement. This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and cancels and supersedes any prior understandings and agreements between the parties hereto with respect to this matter. There are no representations, warranties, terms, conditions, undertakings, or collateral agreements, express, implied or statutory, between the parties other than as expressly set forth in this Agreement.

4

8.5    Waiver. No waiver of any portion of this Agreement by a party shall be enforceable against that party unless it is in writing and signed by an authorized officer of that party. Any waiver by any party of any provisions of this Agreement in one instance shall not be considered a waiver of such provision in any other instance.

8.6    Notice. All notices and demands hereunder shall be in writing and shall be served by personal service or by express mail at the address of the receiving party set forth in this Agreement (or at such different address as may be designated by such party by written notice to the other party). All notices or demands by mail shall be by certified or registered mail, return receipt requested, or by nationally-recognized private express courier, and shall be deemed complete upon receipt.

8.7    Counterparts. This Agreement may be executed by facsimile simultaneously in two or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute but one and the same instrument.

8.8    Independent Parties. Nothing in this Agreement shall be deemed to create an agency, partnership, joint venture or any other similar relationship, other than that of independent parties. Neither party shall incur any liabilities, obligations or commitments on behalf of the other party.

8.9    Assignment. Sellers may not assign any of its/his rights or obligations under this Agreement without JUPITERIMAGES' written consent. JUPITERIMAGES may assign its rights or obligations freely.

8.10   Confidentiality. The terms of this Agreement are confidential and may not be discussed or otherwise disclosed by Sellers without the prior written consent of JUPITERIMAGES.

5

IN WITNESS WHEREOF the parties have executed this Agreement as of the Effective Date.

Jupiterimages Corporation                              Steve Shapiro Music

Signature:                                             Signature:

Name:                                                  Name: Steve Shapiro
Title:                                                 Title: Owner
Date: 4/18/06                                          Date: 4/12/06

                              Steve Shapiro

                                                       Signature:

                                                       Name: Steve Shapiro
                                                       Date: 4/12/06

6

Macintosh HD:Users:stoveshapiro:Library:Mail Downloads:3606_03_14_Steve Shart1C561 DOC

EXHIBIT "A"

LIST OF MUSIC

Omitted From Complaint

# jupiterimages.

your search ends here

March 9, 2007

**VIA EMAIL**

Mr. Steve Shapiro
Steve Shapiro Music
357 Tchama Street
San Francisco, CA 94104

Re:    **Steve Shapiro and Jupiterimages Corporation**

Dear Steve,

This letter shall serve as confirmation of the agreement between Jupiterimages Corporation
("Jupiter") and Steve Shapiro and Steve Shapiro Music (collectively "Shapiro"), whereby Shapiro
authorizes Jupiter to deduct the sum of seventeen thousand four hundred and sixty-six dollars and
five cents (U.S. $17,466.05) ("Deduction No. 1") from the escrow currently being held by Jupiter,
in accordance with the terms of the Asset Purchase Agreement between Jupiter and Shapiro,
dated April 18, 2006.

Jupiter shall deduct a further amount of fifty seven thousand seven hundred and fifty dollars (U.S.
$57,750.00) ("Deduction No. 2) from the remaining escrow.

Deduction No. 1 represents the anticipated amount needed to obtain a retroactive license from
Ray Yates and Flying Hands Music, for 205 musical tracks which were transferred to Jupiter, by
Shapiro, which Shapiro did not have title to transfer.

Deduction No.2 represents a pro-rated refund to Jupiter of the purchase price set forth is the Asset
Purchase Agreement between Jupiter and Shapiro, as a result of the 231 musical tracks (205
Flying Hands tracks and 28 additional tracks identified by Shapiro), which Shapiro did not have
title to transfer. Each track was valued at two hundred and fifty dollars (U.S. $250).
~~The above mentioned amounts are subject to change by Jupiter, upon written notification and~~
~~explanation to Shapiro.~~ *mutual agreement* *yess*

Please sign below to acknowledge your acceptance of these terms.

Sincerely,

Mitchell S. Eisenberg
SVP and General Counsel

Agreed to and Accepted By:                             Agreed to and Accepted By:

Steve Shapiro                                    Steve Shapiro Music

*Approved as to form + content*                   By: *Steve Shapiro*

23 Old Kings Highway South, Darien, CT, 06820
t. 203 662 2800 ▫ f. 203 655 4686 ▫ e-mail: info@jupiterimages.com        www.jupiterimages.com

## SOUND PRODUCTION AGREEMENT
### between
### Jupiterimages Corporation and Steve Shapiro

This SOUND PRODUCTION AGREEMENT (the "Agreement") is made and entered into this $\underline{18}^{th}$ day of April, 2006, by and between Jupiterimages Corporation ("**JUPITERIMAGES**"), an Arizona corporation having an office at 23 Old Kings Highway South, Darien, CT 06820 and Steve Shapiro ("**Artist**") an individual having his principal place of business at 357 Tahama Street, San Francisco, CA 94103 USA.

WHEREAS, JUPITERIMAGES is in the business of arranging for the licensing, processing, keywording, marketing and management of Sounds (as defined herein); and,

WHEREAS, Artist is in the business of creating, producing, editing and retouching Sounds; and

WHEREAS, JUPITERIMAGES and Artist have determined that it is in their mutual best interests for Artist to specially create Sounds for JUPITERIMAGES;

NOW THEREFORE, in consideration of the premises, the mutual covenants and conditions set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. DEFINITIONS.

   1.1 Sounds(s). "Sound(s)" shall mean any digital file which is produced pursuant to this Agreement, and in accordance with the terms and conditions of this Agreement by any digital, electronic, or similar or equivalent technique now known, or hereafter developed or used.

   1.2 Sound Select(s). "Sound Select(s)" shall refer to those Sounds that are produced by Artist as provided in Section 2.4 hereof.

2. ARTIST IMAGE DELIVERY AND SERVICES

   Artist agrees to the following during the term of this Agreement:

   2.1 Sound Delivery. During the term of this Agreement, Artist shall deliver thirty (30) Sound Selects to JUPITERIMAGES of a type specified by JUPITERIMAGES. All Sound Selects shall be subject to JUPITERIMAGES final evaluation and acceptance. Artist shall deliver at least two Sound Selects per month. At no time shall the total number of Sound Selects under this Agreement exceed 30.

   2.2 Transfer of Title. Artist acknowledges that with regard to all Sounds submitted to JUPITERIMAGES hereunder and from which JUPITERIMAGES accepts one or more Sound Selects, all Sounds shall be considered a "work or works made for hire," and that JUPITERIMAGES, as the entity for which the Sounds are specially prepared, shall own all right, title and interest in, including the entire copyright in all such Sounds. Artist will assign to JUPITERIMAGES the ownership of all right, title and interest in and to such Sound, and do all other acts reasonably necessary to perfect JUPITERIMAGES' ownership of the entire copyright, and other rights, in such Sound, at no additional charge to JUPITERIMAGES. Artist further agrees that to the extent JUPITERIMAGES has expressly consented, in writing, that any Sound may be created by an employee or contractor of Artist, Artist shall assure that such Sound shall be assigned to JUPITERIMAGES, without further cost to JUPITERIMAGES, and that Artist or its employees or contractors shall comply with all of the terms of this Agreement to assure that such Sound shall also be a "work or works made for hire."

   2.3 Sound Costs. Artist will be solely responsible for all costs and expenses related to the Sound(s)

and the services required of Artist under this Agreement including, without limitation, all costs of Sound Production travel, sound artists, locations, crew, props, studio, materials, sound equipment, computer equipment, media, rent, entertainment, telephone and communications.

2.4     Editing and Retouching. JUPITERIMAGES will determine which Sounds are the most marketable, and Artist shall edit and retouch such Sounds ("Sound Select(s)"). The Sound Selects will be free of defects in workmanship and materials. In the event JUPITERIMAGES determines that any Sound Select is not free of defects, it shall notify Artist of the existence and nature of such alleged defects and JUPITERIMAGES' exclusive remedy with regard thereto shall be for Artist, as determined by Artist, to (i) withdraw such Sound Select, (ii) provide a substitute Sound Select therefore, or (iii) correct such defect, at Artist's own expense.

2.6     Delivery of Supporting Materials. Artist will deliver to JUPITERIMAGES final retouched files for all Sound Selects. Such delivery will be via FTP or Email or other storage device as determined by JUPITERIMAGES.

2.7     Commercial Referrals. Artist shall refer to JUPITERIMAGES any request for the license of any Sounds created for and accepted by JUPITERIMAGES under this Agreement.

2.8     Moral Rights. Artist waives all moral rights relating to any Sound Select: a) the right to be identified as the author of any Sound Select b) the right to object to any modification of any Sound Select (including, without limitation, cropping, manipulation, or combining Sounds with other sounds or works).

3.     ARTIST REPRESENTATIONS, WARRANTIES AND COVENANTS.

3.1     Representations and Warranties. Artist represents and warrants to JUPITERIMAGES as follows:

3.2     Authority and Performance. Artist has the authority to enter into this Agreement and to perform each of its obligations as provided for herein without violation of any obligation.

3.3     Title to Sounds. With respect to each Sound delivered by Artist to JUPITERIMAGES hereunder, Artist possesses all right, title and interest (including all copyrights) in and to such Sound, including, without way of limitation, any and all Sounds created, with JUPITERIMAGES' prior written consent, by any employee or independent contractor employed or engaged by Artist.

3.4     Originality. Each Sound delivered to JUPITERIMAGES hereunder is an original creation and expression of its subject matter.

3.5     Performance. Artist shall perform the services outlined in this Agreement in a timely manner and consistent with the highest industry standards.

3.6     Business Ethic. Artist shall act in good faith in all of its dealings with JUPITERIMAGES and with respect to the Sounds.

3.7     Non-Infringement & Defamation. Artist shall not submit to JUPITERIMAGES hereunder any Sound that to Artist's knowledge infringes any copyright, trademark, right of privacy or right of publicity of any third party, or defames any third party.

4.     JUPITERIMAGES OBLIGATIONS AND IMAGE MANAGEMENT

4.1     Creative Direction and Support. JUPITERIMAGES will provide Artist with ongoing content

2

need lists to assist Artist in production planning.

4.2    Review by JUPITERIMAGES.    Upon the delivery of any Sounds by Artist to JUPITERIMAGES hereunder, JUPITERIMAGES will promptly review all such Sounds and express to Artist any concerns JUPITERIMAGES may have with the quality or content of the Sound Selects.

4.3    Sound Delivery Memo.    Within **fourteen (14)** days following Artist's delivery of Sounds or an to JUPITERIMAGES, JUPITERIMAGES will promptly sign and return an Sound Delivery Memo in the form attached hereto as Exhibit F, acknowledging JUPITERIMAGES' acceptance or rejection of the Sound Selects submitted.

4.4    Dispute Resolution.    In the event JUPITERIMAGES fails to deliver such Sound Delivery Memo, JUPITERIMAGES shall nevertheless be deemed to have accepted such Sounds, unless JUPITERIMAGES provides Artist, within such **fourteen (14)** day period, with written notice in the manner provided herein of JUPITERIMAGES' rejection of such Sound Selects (the "Dispute Notice"). Upon receipt of a Dispute Notice, JUPITERIMAGES and Artist shall endeavor in good faith to resolve such dispute.

4.5    Sound Credit.    JUPITERIMAGES will have no obligation to credit Artist for the production of Sounds accepted by JUPITERIMAGES hereunder. Notwithstanding the foregoing, JUPITERIMAGES will have the right to credit Artist if so desired, provided that any such credit appears as Artist.

4.6    Sound Treatments.    JUPITERIMAGES shall have the right, in its sole discretion, to make all final judgments with regard to the Sounds accepted by JUPITERIMAGES hereunder.

4.7    Creative Decision.    JUPITERIMAGES, in its sole discretion, has the full right to reject any one or more Sound Selects for the reasons that the Sounds do not meet the criterion of marketable or saleable Sounds.

4.8    Insurance.    JUPITERIMAGES shall have no responsibility for providing Artist, its employees, models or agents with any form of insurance coverage or benefits during the Term of this Agreement.

5.    JUPITERIMAGES REPRESENTATIONS, WARRANTIES AND COVENANTS.

5.1    Representations and Warranties.    JUPITERIMAGES represents and warrants to Artist that JUPITERIMAGES has the authority to enter into this Agreement and to perform each of its obligations as provided for herein.

5.2    Business Ethic.    JUPITERIMAGES shall act in good faith in all of its dealings with Artist and with respect to the Sounds.

6.    COMPENSATION AND EXPENSES.

6.1    Fee.    Subject to early termination as provided herein, JUPITERIMAGES shall pay to Artist the sum of two hundred and fifty dollars ($250) per Sound Select in connection with the performance of Artist services described herein and in accordance with the schedule set forth under Exhibit A hereof.

6.2    Payment Schedule.    Subject to the terms and conditions herein, JUPITERIMAGES shall pay Artist upon JUPITERIMAGES receipt and approval of the Sound Selects.

6.3    Taxes.    Any payment of taxes with respect to the fees received by Artist, or with respect to the payment of employees or contractors engaged by Artist, whether for income tax, federal, state, local or for all the above, will be the sole responsibility of Artist

3

6.4    Meeting Expenses. JUPITERIMAGES shall reimburse Artist for travel expenses if Artist is requested by JUPITERIMAGES, in writing, to meet directly with JUPITERIMAGES at JUPITERIMAGES' offices or other locations as determined by JUPITERIMAGES. Such expenses will include standard coach airline fares, reasonable hotel and meal expenses, and other transportation or transfer expenses. Artist shall not incur these expenses without prior approval from JUPITERIMAGES. Reimbursement shall be made to Artist within 30 days.

7.    INDEMNIFICATION.

7.1    Artist Indemnification. Artist agrees to fully indemnify and hold JUPITERIMAGES harmless from, and against, any and all claims, costs, expenses, liabilities and judgments arising solely out of Artist's negligence, intentionally malicious acts, or material breach of any term of this Agreement.

7.2    JUPITERIMAGES Indemnification. JUPITERIMAGES agrees to fully indemnify and hold ·Artist harmless from, and against, any and all claims, costs, expenses, liabilities and judgments arising solely out of JUPITERIMAGES' negligence, intentionally malicious acts, or material breach of any term of this Agreement.

8.    TERM AND TERMINATION.

8.1    Term. This Agreement shall commence upon signing and shall continue until terminated by either party, at any time, with or without cause upon written notice.

8.3    Effects of Termination. Upon the termination of this Agreement as outlined in Section 8.2 above, the terms as set forth in Sections 2, 3 (with regard to Sounds delivered prior to termination), 8 and 9 hereof shall continue for such period of time as is necessary to effectuate the intent thereof.

8.4    Survival of Rights and Provisions. Notwithstanding any other provision in this Agreement to the contrary, the termination and/or expiration of this. Agreement shall not alter or affect the rights already granted to JUPITERIMAGES as of the effective date of such termination and/or expiration.

9.    GENERAL.

9.1    Notices. All notices and other communications pursuant to or in connection with this Agreement shall be in writing and shall be deemed to have been given and received when actually hand delivered. one business day after dispatch by telegraphic means (including facsimile transmission)(provided that in the event of delivery by telegraphic means the party providing such notice receives written confirmation of receipt and also provides duplicate written notice in any other manner acceptable hereunder), two business days after dispatch by recognized overnight delivery service, or seven days after mailing by certified or registered mail with proper postage affixed and return receipt requested, in each case to the address of the party set forth below (or to any changed address provided by any party to the other parties by notice given as provided herein):

If to JUPITERIMAGES, to:

Copy To: General Counsel

Facsimile No.: 203-655-5079

If to Artist, to:

4

9.2     Use of Company Logos and Trademarks. Neither Artist nor JUPITERIMAGES shall use each other's respective logos or trademarks without specific written permission.

9.3     Governing Law. This Agreement shall be construed in accordance with and governed by the law of the State of New York, without regard to the conflicts of law rules of such state or any presumptions or rules of interpretation unique to that body of law. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the state and federal courts situated in New York, New York.

9.4     Circumstances Beyond Control. Neither party shall be responsible for its failure to perform any of its obligations under this Agreement due to any circumstances beyond its reasonable control including, but not limited to, acts of God, natural disasters, war, terrorism, disease, strikes, fire, blackout or severe and continued interruptions in transportation or communications.

9.5     Confidentiality. The terms of this Agreement shall be confidential and shall not be disclosed by either party without the prior written consent of the other party except as required by law.

9.6     Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the matters covered hereunder. All prior discussions, agreements, proposals, representations, commitments or understandings, whether written or oral, are superseded by this Agreement.

9.7     Relationship of the Parties. Artist is an independent contractor and not an employee or agent of JUPITERIMAGES. Nothing in this Agreement shall be construed to place the parties in the relationship of partners or joint ventures, and neither party shall have the power to obligate or bind the other except as may be expressly provided for herein or except with the prior written authorization of the party to be bound.

9.8     Assignment. This Agreement and the rights and responsibilities of the parties hereunder shall not be assignable by either party without the prior written authorization of the other party, except for any entity which may succeed Artist or JUPITERIMAGES through merger or acquisition, or with regard to any assignment by JUPITERIMAGES to a subsidiary of JUPITERIMAGES.

9.9     Amendment. This Agreement may not be modified or amended in any way by oral agreement, but only by written instrument executed by the duly authorized representatives of both parties hereto.

9.10    Waiver. No waiver of any right or obligation of either party hereto under this Agreement shall be effective unless in writing, specifying such waiver, executed by the party against which such waiver is being enforced. A waiver by either party hereto of any of its rights under this Agreement on any occasion shall not be a bar to the exercise of the same right on any subsequent occasion or of any other right at any time.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the signature blocks designated below, effective as of the date first set forth above.

Jupiterimages Corporation                    Steve Shapiro


Signature: _____           Signature: _____
            Name:                                         Name:
            Title                                         Date:
            Date:                                         Tax ID:

5

If to Artist, to:

_____

9.2     Use of Company Logos and Trademarks. Neither Artist nor JUPITERIMAGES shall use each other's respective logos or trademarks without specific written permission.

9.3     Governing Law. This Agreement shall be construed in accordance with and governed by the law of the State of New York, without regard to the conflicts of law rules of such state or any presumptions or rules of interpretation unique to that body of law. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the state and federal courts situated in New York, New York.

9.4     Circumstances Beyond Control. Neither party shall be responsible for its failure to perform any of its obligations under this Agreement due to any circumstances beyond its reasonable control including, but not limited to, acts of God, natural disasters, war, terrorism, disease, strikes, fire, blackout or severe and continued interruptions in transportation or communications.

9.5     Confidentiality. The terms of this Agreement shall be confidential and shall not be disclosed by either party without the prior written consent of the other party except as required by law.

9.6     Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the matters covered hereunder. All prior discussions, agreements, proposals, representations, commitments or understandings, whether written or oral, are superseded by this Agreement.

9.7     Relationship of the Parties. Artist is an independent contractor and not an employee or agent of JUPITERIMAGES. Nothing in this Agreement shall be construed to place the parties in the relationship of partners or joint ventures, and neither party shall have the power to obligate or bind the other except as may be expressly provided for herein or except with the prior written authorization of the party to be bound.

9.8     Assignment. This Agreement and the rights and responsibilities of the parties hereunder shall not be assignable by either party without the prior written authorization of the other party, except for any entity which may succeed Artist or JUPITERIMAGES through merger or acquisition, or with regard to any assignment by JUPITERIMAGES to a subsidiary of JUPITERIMAGES.

9.9     Amendment. This Agreement may not be modified or amended in any way by oral agreement, but only by written instrument executed by the duly authorized representatives of both parties hereto.

9.10    Waiver. No waiver of any right or obligation of either party hereto under this Agreement shall be effective unless in writing, specifying such waiver, executed by the party against which such waiver is being enforced. A waiver by either party hereto of any of its rights under this Agreement on any occasion shall not be a bar to the exercise of the same right on any subsequent occasion or of any other right at any time.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the signature blocks designated below, effective as of the date first set forth above.

Jupiterimages Corporation                                    Steve Shapiro

Signature: _____                          Signature: _____
                Alan Meckler                                                  4/17/06

                                                                    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

5

## SOUND PRODUCTION AGREEMENT
### Jupiterimages Corporation and Steve Shapro

### EXHIBIT A: Sound File Specification

This Exhibit defines in approximate terms the Sound File Specification to be produced by Artist. Both parties acknowledge and agree that regular verbal and written communication is necessary for the timely delivery of marketable and saleable Sounds.

Artist shall be directly responsible to Director of Content - Jupiterimages or such other individual as is designated from time to time by JUPITERIMAGES for the planning, production and delivery of Sounds.

The # of sounds required each month will vary and will be communicated in writing to the Artist at Jupiterimages discretion.

**This Agreement requires ARTIST to deliver for each Sound Select the following file specifications:**

Sound File Specification for Exhibit A:

-Stereo MP3 (160 kbps), no less than sixty seconds in length. Stinger required.
-2 to 4 loops derived from full length version (16 bit/44kHz Stereo WAV format). Preferred length between 12 and 25 seconds.

6

· EXHIBIT F: Sound Delivery Memo
SOUND PRODUCTION AGREEMENT
Jupiterimages Corporation and Steve Shapiro

---

SOUND DELIVERY and ACCEPTANCE MEMO

Artist hereby delivers to JUPITERIMAGES the Sounds as described below. By signing this Memo, JUPITERIMAGES acknowledges that all Sounds meet technical and marketability standards as established in the original Sound Production Agreement between Artist and JUPITERIMAGES dated [Month] _____, 200__. Upon receipt by Artist of this signed Memo, Artist shall have no further responsibility to archive any of the included Sound. This Memo must be returned to Artist within FOURTEEN (14) days of the Submission Date below. If this Memo is not returned within 14 days, JUPITERIMAGES will be deemed to have accepted the Sounds

Submission Date:

Submission #:

Submission Name:

Description:

Total Sound Selects:

Accepted by Jupiterimages:

Authorized Signature:

Print Name:

Date:

## Independent Contractor Agreement

This Agreement is made this _17_ day of _April_____, 200 6  by  and  between
Jupiterimages Corporation (hereinafter "Company") and _Steve  Shapiro_____, (hereinafter
"Contractor") with an address at _357  Tehama St.____ for the furnishing by Contractor of
certain services as defined below.  _SF  CA  94103_

The Parties, intending to be legally bound, agree as follows:

### 1.    Application of this Agreement:

The purpose of this Agreement is to set forth the terms, conditions and administrative
procedures applicable to technical and other services provided by Contractor for and on behalf
of Company.

### 2.    Term:

This Agreement will commence upon execution and will continue for a period of one year unless
sooner terminated pursuant to section 10 of this Agreement.

### 3.    Specific Work:

Company has specially ordered or commissioned you to create or prepare a work or series of
works, or to provide services, as described on Schedule A (the "Work"). You shall work
primarily with Mike Bielenberg who shall directly oversee the Work or others as directed by
Company.

In providing your services under this Agreement, you agree to devote your time, skill, best
efforts and loyalty to the affairs of the Company and to the diligent performance of your
responsibilities for the Company.  Contractor shall provide and utilize all of the computer
workstations, printers, office furniture and other hardware and equipment necessary to perform
his services under this Agreement.

### 4.    Price and Payment:

Contractor shall be reimbursed for the Work in the amount of thirty thousand dollars ($30,000)
payable in equal monthly installments in arrears. As material term of this Agreement,
Contractor agrees that the compensation arrangement established under this Agreement
represents Contractor's entire compensation for the performance of services hereunder.
Contractor agrees that he/she is not eligible for, and shall not participate in, any of
Company's employee benefit plans or programs, including, but not limited to, bonus,
vacation, health, pension, incentive compensation or other employee programs or policies
("Benefits Plans"). If for any reason Contractor is deemed to be a statutory or common-law
employee of Company by any governmental agency, court, or other entity, Contractor
hereby waives any right to, and agrees to neither seek nor accept, any benefits under the
Benefits Plans, even if by the terms thereof Contractor or its employees or assistants might
be eligible for such benefits.

Independent Contractor's Agreement

1

5.   **Quality:**

Contractor shall perform its services with care, skill and diligence, in accordance with applicable professional standards currently recognized by such profession and shall be responsible for the professional quality, technical accuracy and completeness, and coordination of all reports, designs, drawings, information, specifications and other items and services furnished hereunder. Contractor shall comply with all applicable federal, state and local laws, ordinances, codes and regulations, as well as applicable industry standards, in performing services hereunder.

Contractor shall perform work under this Agreement pursuant to specifications provided by Company.

Contractor represents and warrants that the work created for the Company is original and will not infringe the rights of any third party, and the work has not been previously assigned or licensed.

6.   **Ownership of Documents and Inventions/Work-Made-For-Hire:**

All materials, film, plates, drawings, plans, specifications, calculations, reports and other documentation prepared by Contractor under this Agreement shall be the property of Company as a "work-made-for-hire" within the meaning of the United States Copyright Act. In the event that a work created by Contractor under this Agreement does not qualify as a work-made-for-hire, Contractor agrees to assign and transfer the copyright for all such work to the Company, at no additional cost. All such documents shall be delivered to Company upon the completion of each work/project under this Agreement.

7.   **Independent Contractor:**

During the performance of this Agreement, Contractor shall be an independent contractor and not an agent or employee of Company. Contractor shall supervise the performance of its own services and shall have control over the manner and means by which its services are performed, subject to compliance with this Agreement, the statements of work/projects and any specifications, schedules, meetings or other matters provided by Company. Contractor shall have no authority to bind Company to any agreements or obligations of any kind without the prior written consent of the Company. Specifically, Contractor shall have no authority to make any offers of employment or commitments of any kind regarding any current or prospective employees' terms or conditions of employment.

Company acknowledges that Contractor may work for others during the period of this Agreement provided however, Contractor may not work for any other party or accept any work assignments which may conflict with Contractors work for Company.

8.   **Non-Assignability:**

Contractor shall not subcontract or assign this Agreement, or otherwise dispose of its right, title or interest therein or any part thereof to any person without first obtaining the prior written consent of Company.

9.   **Insurance:**

Independent Contractor's Agreement

2

Contractor shall purchase and maintain, at his sole expense, such insurance as will protect Contractor from the losses or claims set forth below which arise out of or result from Contractor's performance or obligations to perform under this Agreement, whether such performance be by Contractor or by anyone directly or indirectly employed by Contractor, or by anyone for whose acts Contractor may be liable:

(a) claims under worker's compensation, disability benefit and other similar employee benefits acts;

(b) claims for damage because of bodily injury, occupational sickness or disease or death of Contractor, his employees or others;

(c) claims for damages because of injury to or destruction of tangible property.

10. **Taxes**

Contractor acknowledges that he is responsible for the payment of any taxes, including federal, state, or local income, self employment, Medicare, social security, or other taxes as a result of its, or its representatives' services, except as expressly provided in this Agreement.

11 **Termination:**

Company shall have the right to terminate this Agreement for its convenience, in whole or in part, at any time upon 30 days written notice. In the event of such termination, Contractor shall promptly comply with the directions contained in such notice and complete all work assignments for Company, on a timely basis, unless directed otherwise by Company in writing. Termination shall include payment for actual work performed before and after the notice of termination and actual, substantiated costs. The rights and remedies of Company provided in this Section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Agreement.

12. **Proprietary Data and Restrictions:**

During the course of Contractor's work under this Agreement, Company may reveal to Contractor certain concepts, data, information and requirements relating to its business. Contractor agrees that any such information which is of a confidential, proprietary or of a non-public nature, will be used by Contractor only for the benefit of Company and for the purposes of this Agreement. Contractor agrees not to sell, transfer, sublicense, disclose or in any way make available any of such data and information to others.

The Parties agree that the protection of Company's confidential, non-public information is an essential part of this Agreement and that the disclosure of such information to a competitor of Company could cause irreparable harm to Company. The Parties acknowledge that it would be difficult to compensate Company for the resulting harm. Therefore, the Contractor agrees that, together with any other rights at law or equity, may seek injunctive relief against Contractor.

13. **General**

This Agreement, including the written statements of work/projects, constitutes the entire agreement of the Parties hereto and can only be amended with the written consent of both

Independent Contractor's Agreement

3

Parties. If any provision of this Agreement is held invalid by a court, then the remaining provisions will remain in full force and effect.

The failure of Company to enforce any provision of this Agreement will not be construed as a waiver of Company's right to enforce that provision or any other provision of this Agreement, and will not operate as an amendment to this Agreement.

This Agreement shall be governed by and construed in accordance with the laws of the state of Connecticut. Any action to enforce any term of this Agreement shall be brought in the state of Connecticut.

AGREED AND ACCEPTED BY:

Jupiterimages corporation

By: _____
By: Alan Meckler

Its: President

Date: 4/18/06

Contractor

Printed Name: Steve Shapiro

Date: 4/17/06

Steve Shapiro

## Schedule A

1- Planning and supervising of Jupiter music Web sites(in conjunction with Mike Bielenberg) the integration of the various websites into one Jupiter music Web site. This would include development of a search box with extensive criteria, the expansion of the browse categories and implementation of watermarking.

2- Participation in up to 5 web developer trade shows around the country. This would include attendance at these shows and demonstrating the Jupiter Music website. Contractor agrees that attendance and any such trade shows must be pre-approved on a case by case basis with regard to all costs and benefit.

3- Planning and supervising the development of a library of flash files that integrate images, music and voice over. The library would be organized into categories such as motivation, integrity, reliability, responsiveness, speed, service, support, etc.

4 – such other services as mutually agreed by the parties.



**STEVE SHAPIRO MUSIC**

7777 Skyline Blvd.  Oakland, CA  94611

510-339-9930
steve@stevemusic.com
www.stevemusic.com

Statement Date
4/18/2007          **STATEMENT**

| | |
|---|---|
| **Company Name** | JupiterTunes |
| **Address** | 1575 Old Alabama Rd.  #207-173 |
| **City** | Atlanta |
| **State** | GA |
| **Zip** | 30076-213 |

| DATE | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|
| 1/18/2006 | Library Purchase (adjusted) | $498,500 | |
| 1/28/2006 | Received | | 278,125 |
| | Balance Remaining | 220,375 | |
| 10/18/2006 | Payment Due | 110,187 | |
| 1/18/2006 | Payment Due | 110,187 | |
| | Less Flying Hands settlement | | 17,466 |
| | **TOTAL BALANCE DUE:** | $202,908 | |



# STEVE SHAPIRO MUSIC

## 7777 Skyline Blvd. Oakland, CA 94611

510-339-9930
steve@stevemusic.com
www.stevemusic.com

**Statement Date**    **STATEMENT**
4/20/2007

**Company Name** JupiterTunes
**Address**    1575 Old Alabama Rd.  #207-173
**City**    Atlanta
**State**    GA
**Zip**    30076-213

| DATE | DESCRIPTION | CHARGES | CREDITS |
|------|-------------|---------|---------|
| 7/20/2006 | Invoice #8606 (1 track) | $ 250 | |
| 8/1/2006 | Invoice #8608 (2 tracks) | 500 | |
| 8/18/2006 | Invoice #8614 (2 tracks) | 500 | |
| 9/7/2006 | Invoice #8623 (1 track) | 250 | |
| 10/17/2006 | Invoice #8630 (Consulting) | 2500 | |
| 11/17/2006 | Invoice #8640 (Consulting) | 2500 | |
| 12/17/2006 | Invoice #8644 (Consulting) | 2500 | |

**TOTAL BALANCE DUE:**    $9000.