### ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement made as of this ___ day of April, 2006 (the "**Effective Date**") by and between Jupiterimages Corporation ("**JUPITERIMAGES**"), having its principal place of business at 23 Old Kings Highway South, Darien, Connecticut 06820, and Steve Shapiro Music ("Company"), and Steve Shapiro (collectively the "Sellers"), having its principal place of business at 357 Tehama Street, San Francisco, CA 94103 (hereafter "Sellers").

**BACKGROUND:**

1.    WHEREAS, JUPITERIMAGES publishes digital content and licenses the rights in such content to end-users;

2.    WHEREAS, Sellers have created and own a collection of music, music rights, production elements and sound effects published and licensed through the stevemusic.com Web Site, CDs, or through third party distributors and other licenses and known as the Steve Shapiro Online Music Library (the "Business"), and

3.    WHEREAS, JUPITERIMAGES wishes to purchase and Sellers wish to sell the assets of the Business.

NOW THEREFORE, in consideration of the mutual promises, covenants and obligations contained herein, the parties agree as follows:

**1.    INTERPRETATION**

1.1    Definitions.  As used herein:

"Agreement" means this Asset Purchase Agreement, including any schedules or exhibits attached hereto.

"Acquired Assets" has the meaning as set out in Section 2.1.

"Assumed Liabilities" has the meaning as set out in Section 2.2(b).

"Confidential Information" has the meaning as set out in Section 7.1.

"Employees" has the meaning as set out in Section 2.3.

"Effective Date" has the meaning as set out in the introductory paragraph.

"Music" means the ███ original musical compositions and ███ master sound recordings, as listed and described in Exhibit "A" attached hereto.

"Intellectual Property Rights" means all copyright, trademark, patent, database, trade secret, domain name, right of publicity and other intellectual property rights or interests, including without limitation, all applications, registrations, related goodwill, rights to register or apply for registration, renewals, reversions, all waivers and assignments of moral rights, all assignments of releases, all assignments of any "work for hire" agreements and all rights to enforce such rights or interests, in any work, including without limitation, the structure, sequence and organization of the same, worldwide and in perpetuity.

"Web Site" the Internet Web Site located at stevemusic.com with the home page as of _____, 2006 shown as Exhibit B.

1.2    Exhibits and Schedules.  The following Schedules are appended to and form part of this Agreement:

| | |
|---|---|
| Exhibit "A" | List of Music |
| Exhibit "B" | Web Site Home Page |
| Exhibit "C" | List of Acquired Assets |

EXHIBIT A

2.    **PURCHASE**

2.1    Transfer and Assignment. Sellers hereby convey, sell, assign and transfer in perpetuity, the entire worldwide, right, title and interest, in and to all of the assets of the Business: including, without limitation, the Music (in all formats and series); music rights (including, without limitation, production rights, publishing rights, broadcast rights, composer rights and synchronization rights); prepaid royalties/expenses; all content; Intellectual Property Rights; supplier, producer, and distributor agreements; license and other agreements; customer lists; e-mail subscriber lists and databases; compact disks; releases; all of the foregoing including, without limitation, as listed on Exhibit C (the "Acquired Assets").

2.2    Liabilities.

(a)    JUPITERIMAGES shall only assume the agreements and obligations to be performed after the date of this Agreement and listed on Exhibit C (the "Assumed Liabilities").

(b)    Other than the Assumed Liabilities, JUPITERIMAGES shall not assume any other liabilities of the Business or the Acquired Assets for any periods prior to the date of this Agreement (the "Excluded Liabilities").

2.3    Moral Rights. Without limiting the generality of Section 2.1, to the extent permitted by law, Sellers do hereby assign to JUPITERIMAGES, the benefit of all waivers of moral rights in the Music including the right to restrain or claim damages for any distortion, mutilation, or other modification of the Music or any part thereof whatsoever, and the right to restrain use or reproduction of the Music in connection with any product or service.

2.4    Delivery. Upon execution of this Agreement, Sellers shall deliver:

(a)    the Music and Acquired Assets to JUPITERIMAGES in a form reasonably acceptable to JUPITERIMAGES;

(b)    copies of all (i) applicable releases related to the Music and (ii) "work for hire" agreements and assignments related to the Music. If copies of the releases and assignments are not provided, Sellers agree to fully indemnify and hold JUPITERIMAGES harmless from, and against, any and all claims related to such matters.

3.    **PURCHASE PRICE**

3.1    Payment. The purchase price payable to Sellers for the Business shall be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮per musical composition) (the "Purchase Price") payable by JUPITERIMAGES as follows: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮The Escrow shall be used to fund indemnification obligations, if any, of Sellers for a period of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from the execution of this Agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3.2    Currency. All payments to Sellers pursuant to this Agreement shall be made in the lawful currency of the United States and all amounts referred to in this Agreement are in the lawful currency of the United States.

4.    **WARRANTY/COVENANT**

2

4.1     Sellers represent, warrant, and covenant that:

   (a) Sellers are the sole creator, composer, publisher and owner of the Music and Acquired Assets and that they have every right to enter in this Agreement and sell the Music and transfer the rights herein;

   (b) except as expressly set forth on Exhibit C, Sellers have made no commitment, agreement or understanding verbally, or in writing, with any other party for the use, ownership or license of the Music or Acquired Assets, in any manner, after the date of this Agreement;

   (c) to the best of Sellers' knowledge, the Music and assets do not infringe, and Sellers have received no notice of any potential infringement, upon any statutory or common law copyright, trademark, contractual, proprietary right, right of publicity or privacy, or any other right of any other person or entity;

   (d) to the best of Sellers' knowledge, at all times the Music has been used distributed and licensed in full compliance with all applicable laws;

   (e) the Music and Acquired Assets are free and clear of all liens, encumbrances, security interests, restrictions or claims of any kind or nature;

   (f) Sellers have all power and authority to enter into this Agreement and to comply with its terms;

   (g) to the best of Sellers' knowledge, the Music and Acquired Assets do not contain any content or item which is libelous of another, defamatory, malicious, or that contains any viruses and Sellers have received no notice and have no knowledge of any claim of libelous, defamatory, malicious or virus content related to the foregoing;

   (h) there is no action, suit, proceeding or investigation pending or, to the best of the Sellers' knowledge, threatened, which could have an adverse effect on the publishing, distributing, downloading, prospects, earnings, ownership or condition (financial or otherwise) of the Music, Acquired Assets or Business;

   (i) no representation or warranty of Sellers in this Agreement contains any misleading or untrue statement of material fact or omits to state a material fact;

   (j) Sellers shall not keep any copies of the Music or Acquired Assets, nor make any use of the Music or Acquired Assets after the date of this Agreement;

   (k) the Business does not pay any royalties, commissions or fees in connection with the Music to any third party except as listed on Exhibit C; and

   (l) Sellers each agree that they shall not be entitled to any royalties or other similar payments with respect to the Music or Acquired Assets upon, or following, execution of this Agreement or any subsequent use or licensing of the Music.

   (m) Sellers shall continue to operate the Web Site and host the Music, without cost to JUPITERIMAGES, for a period of at least ▓▓▓days.

   (n) Sellers shall promptly pay to JUPITERIMAGES any payments received by Sellers for the license of the Music after the date of this Agreement.

   (o) Sellers shall maintain a link on the stevemusic.com Web site for a period of twelve months directing anyone looking to download music clips to a JUPITERIMAGES Web site, as directed by JUPITERIMAGES.

   (p) For a period of twenty-four months (24) following the date of this Agreement, Seller shall not, directly or indirectly, (i) sell or license any music tracks on the stevemusic.com Web site by download, subscription, cd, dvd, or otherwise, (ii) participate in, engage in, or operate the development, distribution, operation, licensing, marketing or sale of any online Internet Web site for the download of royalty free music. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
   ▓▓▓▓▓▓

5.   **INDEMNITY**

5.1     Sellers agree to fully defend, indemnify and hold JUPITERIMAGES and its parent, subsidiaries, officers, directors, employees and affiliates harmless from, and against, any and all costs, damages, expenses, liabilities, and other claims, including attorneys' fees and court costs, that are in any way connected to

Sellers' breach of any term of this Agreement.

**6.     LIMITATION OF LIABILITY**

6.1     Limitation of Liability. EXCEPT FOR FRAUD OR WILLFUL MISCONDUCT BY A PARTY, IN NO EVENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, OR SPECIAL DAMAGES RELATING TO THE IMAGES, INCLUDING, WITHOUT LIMITATION, ANY BUSINESS INTERRUPTION, LOSS OF GOODWILL, LOST PROFITS OR LOST SAVINGS.

**7.     CONFIDENTIALITY**

7.1     Confidentiality. Each of the parties hereto agrees to keep confidential any and all information with respect to the other party, including without limitation, information relating to data, technology, business, financial affairs, and operations of the other party and the terms of this Agreement ("**Confidential Information**") which it has received and which is not otherwise available to the general public without restriction. Notwithstanding the foregoing, each of the parties shall be entitled to disclose such Confidential Information (i) to its agents, employees or representatives who have a need to know such Confidential Information and are bound by obligations to maintain the confidentiality of such information, for the purpose of performance under this Agreement and exercising the rights granted under this Agreement, or (ii) to the extent required by applicable law, or (iii) during the course of or in connection with any litigation, arbitration or other proceeding based upon or in connection with the subject matter of this Agreement, provided that the party wishing or required to disclose such Confidential Information shall give the other reasonable notice prior to such disclosure and shall comply with any applicable protective order or equivalent. Confidential Information shall not include that information defined as Confidential Information above which the receiving party can conclusively establish: (i) was in the possession of the receiving party at the time of disclosure; (ii) prior to or after the time of disclosure became part of the public domain without the act or omission of the party to whom it was disclosed; (iii) was disclosed to the receiving party by a third party under no legal obligation to maintain the confidentiality of such information; or (iv) was independently developed by the receiving party.

**8.     GENERAL**

8..1    Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the United States of America and the state of New York, without regard to the conflicts of law principles. If either party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees. Each party waives any right, and agrees not to apply to have any disputes under this Agreement tried or otherwise determined by a jury, except where required by law.

8.2     Enforceability. If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid, illegal or unenforceable, such provisions or part thereof which is necessary to render the provision valid, legal and enforceable, shall be revised or, if necessary, severed from the Agreement and the other provisions and the remaining part thereof of that provision shall remain in full force and effect.

8.3     Further Assurances. The parties agree to do all such things and to execute such further documents as may reasonably be required to give full effect to this Agreement.

8.4     Entire Agreement. This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and cancels and supersedes any prior understandings and agreements between the parties hereto with respect to this matter. There are no representations, warranties, terms, conditions, undertakings, or collateral agreements, express, implied or statutory, between the parties other than as expressly set forth in this Agreement.

4

8.5     Waiver.  No waiver of any portion of this Agreement by a party shall be enforceable against that party unless it is in writing and signed by an authorized officer of that party.  Any waiver by any party of any provisions of this Agreement in one instance shall not be considered a waiver of such provision in any other instance.

8.6     Notice.  All notices and demands hereunder shall be in writing and shall be served by personal service or by express mail at the address of the receiving party set forth in this Agreement (or at such different address as may be designated by such party by written notice to the other party).  All notices or demands by mail shall be by certified or registered mail, return receipt requested, or by nationally-recognized private express courier, and shall be deemed complete upon receipt.

8.7     Counterparts. This Agreement may be executed by facsimile simultaneously in two or more counterparts, each of which shall be deemed to be an original and all of which together shall constitute but one and the same instrument.

8.8     Independent Parties. Nothing in this Agreement shall be deemed to create an agency, partnership, joint venture or any other similar relationship, other than that of independent parties.  Neither party shall incur any liabilities, obligations or commitments on behalf of the other party.

8.9     Assignment.  Sellers may not assign any of its/his rights or obligations under this Agreement without JUPITERIMAGES' written consent.  JUPITERIMAGES may assign its rights or obligations freely.

8.10    Confidentiality.  The terms of this Agreement are confidential and may not be discussed or otherwise disclosed by Sellers without the prior written consent of JUPITERIMAGES.

5

IN WITNESS WHEREOF the parties have executed this Agreement as of the Effective Date.

Jupiterimages Corporation                    Steve Shapiro Music

Signature _____               Signature: _____
Name: Alan Meckler                          Name: Steve Shapiro
Title: President                            Title: Owner
Date: 4/18/06                               Date: 4/12/06

                          Steve Shapiro

                                            Signature: _____
                                            Name: Steve Shapiro
                                            Date: 4/12/06

6

Macintosh HD:Users:steveshapiro:Library:Mail Downloads:2006_03_14_Steve Sha#11C26].DOC