Steven B. Stein, Esq. [SBN 52829]
**LAW OFFICE OF STEVEN B. STEIN**
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel.: (415) 646-7171
Fax: (415) 981-1095

Attorneys for Plaintiffs, STEVE SHAPIRO
and STEVE SHAPIRO MUSIC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE SHAPIRO and STEVE SHAPIRO MUSIC,<br><br>Plaintiffs,<br><br>vs.<br><br>JUPITERIMAGES CORPORATION,<br><br>Defendant. | Case No. 3:07-CV-5540 PJH<br><br>**DECLARATION OF STEVEN B. STEIN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A STAY**<br><br>Current Hearing Date: March 12, 2008<br>Time: 9:00 a.m.<br>Location: Courtroom 3 |

I, Steven B. Stein, do hereby declare that the following is true and correct:

1. I am an attorney at law, licensed to practice in the courts of the State of California. I am a Partner with the Law Office of Steven B. Stein, attorneys of record for Plaintiffs Steve Shapiro and Steve Shapiro Music. I have personal knowledge of the matters stated herein and if called as a witness, could and would competently testify thereto.

2. On February 20, 2008, I received electronic notice that Connecticut counsel for Jupiterimages, Steward Edelstein, electronically filed the Rule 26(f) Report of the Parties' Planning Conference ("26(f) Report") in the Connecticut action entitled <u>Jupiterimages Corp. v. Steve Shapiro, Doing Business as Steve Shapiro Music</u>, Civil Action No. 3:07 CV 1614 (JBA).

{N0783366}

---

DECLARATION OF STEVEN B. STEIN IN SUPPORT OF OPPOSITION TO MOTION
TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A STAY
Case No. 3:07-CV-5540 PJH

3. A true copy of the 26(f) Report, without exhibits, is attached hereto as Exhibit A..

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 20, 2008 at San Francisco, California.

_____
Steven B. Stein

{N0783366}

DECLARATION OF STEVEN B. STEIN IN SUPPORT OF OPPOSITION TO MOTION
TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A STAY
Case No. 3:07-CV-5540 PJH

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JUPITERIMAGES CORPORATION,                         CIVIL ACTION NO.
                                                   3:07 CV1614 (JBA)
    Plaintiff

VS.

STEVE SHAPIRO, DOING BUSINESS
AS STEVE SHAPIRO MUSIC,

    Defendant                                  FORM 26(f) REPORT
                                                   OF PARTIES'
                                                   PLANNING MEETING

                                                   FEBRUARY 19, 2008

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Date Complaint Filed:       November 1, 2007

Date Complaint Served:      November 7, 2007

Date of Defendant's Appearance:   December 21, 2007

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 38, a conference was held on January 16, 2008. The participants were:

Stewart I. Edelstein for the plaintiff, Jupiterimages Corporation ("Jupiterimages").

Anthony M. Fitzgerald and Steven B. Stein for the defendant, Steve Shapiro, d/b/a Steve Shapiro Music ("Shapiro").

I.    **Certification**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and in consultation with their clients, have developed the following proposed case management plan. Counsel further certifies that they have forwarded a copy of their report to their clients.

{N0783109 2}

II. Jurisdiction

A. Subject matter jurisdiction is based on diversity of citizenship.

B. Personal jurisdiction is not contested.

III.    **Brief Description of Case**

   A. Claims of Plaintiff:

Shapiro entered into an Asset Purchase Agreement (the "Agreement") with Jupiterimages dated April 18, 2006. The assets that are the subject of the Agreement are music, music rights, prepaid royalties and expenses, intellectual property rights, rights under various Shapiro agreements, customer lists, and other assets referenced in the Agreement.

In Paragraph 4.1(a) of the Agreement, Shapiro represents to Jupiterimages that he is the "sole creator, composer, publisher and owner" of the assets and that he has "every right to enter in this Agreement and sell the Music and transfer the rights herein." "Music" is defined in Paragraph 1.1 as "the 2,225 original musical compositions and 2,225 master sound recordings" listed in Exhibit A to the Agreement.

In Paragraph 4.1(c) of the Agreement, Shapiro represents to Jupiterimages that, to the best of his knowledge, the Music and assets do not infringe on "any statutory or common law copyright, trademark, contractual, proprietary right, right of publicity or privacy, or any other right of any other person or entity."

In Paragraph 4.1(e) of the Agreement, Shapiro represents to Jupiterimages that "the Music and Acquired Assets [as defined in Paragraph 2.1 of the Agreement] are free and clear of all liens, encumbrances, security interests, restrictions or claims of any kind or nature."

In Paragraph 4.1(f) of the Agreement, Shapiro represents to Jupiterimages that "Sellers have all power and authority to enter into this Agreement and to comply with its terms."

Plaintiff contends that none of these representations is true. In fact, Shapiro did not own many of the assets that are the subject of the Agreement, for which Jupiterimages paid him $556,250.

This Complaint is in ten counts: 1) fraud; 2) negligent misrepresentation; 3) innocent misrepresentation; 4) breach of contract as to ownership of assets; 5) breach of contract as to confidentiality provision in the Agreement (Section 7.1); 6) breach of contract as to the non-competition provision of the Agreement (Section 4.1(p)), which provides that Shapiro cannot sell or license music tracks or participate in marketing of an online Internet website for the download of music during the agreed period); 7) breach of contract as to the indemnification provision in the Agreement (Section 5.1); 8) violation of the Uniform Commercial Code, Secs. 2-312 and 2-313; 9) violation of the Connecticut Unfair Trade Practices Act; and 10) rescission.

The relief Jupiterimages seeks consists of compensatory damages; contractual, common law, and statutory attorney's fees; common law and statutory punitive damages; UCC remedies; pre-judgment interest, and rescission of the Agreement.

Plaintiff does not agree with or consent to defendant's claims contained in Section III B below.

    B.    Defenses and Claims of Defendant:

Defendant does not agree with or consent to the characterization of plaintiff's claims contained in Section III A above.

Defendant sold rights to 2,225 individual tracks to plaintiff at $250.00 per track. Defendant acknowledges that approximately 400 of the 2,225 individual tracks sold to plaintiff did not meet or may not have met certain representations and warranties in the Agreement. Defendant contends that Plaintiff was aware, when it purchased the tracks, that approximately 5,000 of the approximately 7,000 tracks in defendant's library would not meet the warranties under the Agreement and the agreement provided for a remedy in the event of the inadvertent sale of tracks not meeting the warranties. Defendant asserts that he has gone to great lengths to abide, in good faith, by all indemnification obligations contained in the Agreement with respect to the tracks not meeting the warranty obligations. Defendant further contends that Plaintiff solicited, encouraged, and accepted defendant's money, concessions, and other consideration and compensation until the defendant filed a declaratory relief action in California state court whereby defendant sought to establish, among other things, that the transfer of the tracks not meeting the warranty provisions was inadvertent.

In addition to denying the charging allegations in plaintiff's Complaint, Defendant intends to assert affirmative defenses including, without limitation: failure to state a claim upon which relief may be granted; payment, release, waiver, estoppel, and laches;

Defendant also intends to assert a counterclaim seeking declaratory relief as follows:

a. Defendant has complied with the indemnification requirements of the Agreement;

b. Defendant did not engage in fraud or willful misconduct and is therefore, pursuant to the Agreement, not liable for incidental, consequential, indirect, or special damages including, without limitation damages for business interruption, loss of good will, lost profits or

lost savings.

    c.    Rescission is not available to plaintiff.

IV    **Statement of Undisputed Facts:**

Counsel certifies that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

Defendant, Steve Shapiro is a composer of music. In early 2006, plaintiff, Jupiterimages Corporation ("Jupiter") expressed an interest in acquiring a library of musical pieces or "tracks" from Shapiro.

Jupiter and Shapiro negotiated the terms of an Asset Purchase Agreement that was executed as of April 18, 2006 ("Agreement"). A redacted copy of the Agreement is attached hereto as Exhibit A.

On the date of the Agreement, Shapiro received from Jupiter the first installment of the sum due under the Agreement: $278,125, representing one-half of the sum due under the Agreement.

Flying Hands Music notified Jupiter that it owned 209 of the tracks ("Flying Hands Tracks") that Shapiro had sold to Jupiter and that their digital analysis showed that at least one other track appeared not to comply with Shapiro's representations and warranties under the Agreement because it was available for sale on Amazon.com. Mike Bielenberg, who works for Jupiter, e-mailed Shapiro on January 10, 2007, the list of these 209 tracks and notifying Shapiro of their claimed rights in the tracks and demanding Shapiro review all tracks sold to Jupiter under the Agreement and confirm their ownership. A true copy of the above-described e-mail is

attached hereto as Exhibit B.

On January 11, 2007, Shapiro responded, in part, to Bielenberg via e-mail concerning the Flying Hands Tracks. A true copy of the above described e-mail is attached hereto as Exhibit C.

On January 18, 2007, Shapiro e-mailed Mike Bielenberg, confirming that the review of all tracks sold under the Agreement was underway. A true copy of the above described e-mail is attached hereto as Exhibit D.

On January 23, 2007, Shapiro e-mailed Mike Bielenberg and notified him that the review of all tracks had been completed, and 231 of the tracks, including the Flying Hands Tracks, were found not to conform with the representations made under the Agreement. Shapiro explained how he believed this occurred. Shapiro stated unequivocally in this e-mail that that the remaining 1994 tracks were authored solely by him and met each and every term of the ownership warranty in the Agreement. Shapiro apologized and acknowledged responsibility. A true copy of the above described e-mail is attached hereto as Exhibit E.

On May 18, 2007, Jupiter and Shapiro entered into a Settlement Agreement concerning the Flying Hands music and other claims made by Shapiro. A redacted copy of the agreement is attached hereto as Exhibit F.

On or about July 24, 2007 Riptide Music sent written notice to Jupiter claiming rights to 19 tracks that were part of the library Shapiro sold to Jupiter (the "Riptide Tracks"), none of which had been identified by Shapiro in his January 23, 2007 e-mail to Bielenberg. Thereafter, Jupiter removed the Riptide Tracks from its websites, contacted all customers, and withdrew the license rights granted to the Riptide Tracks and offered affected customers apologies, refunds, and credits.

Shapiro refunded Jupiter $4,750 for the Riptide Tracks.

On or about December 21, 2007, Shapiro entered into a settlement agreement with

Riptide and its copyright holders. A true copy of the agreement with Riptide (of which Jupiter is an express third party beneficiary) is attached hereto as Exhibit G.

During the summer of 2007, Jupiter requested that Shapiro pay for the scanning of all remaining tracks purchased under the Agreement through a copyright identification service called, "Replicheck®" to identify music that was or might be composed or owned by others. Shapiro agreed to pay the fee to Replicheck for performing that service. Replicheck identified another 168 tracks registered to owners other than Jupiter or Shapiro (the "Replicheck Tracks"). Jupiter contacted all affected customers and withdrew the license rights granted. Jupiter offered affected customers refunds, apologies, and credits. On August 6, Shapiro paid Jupiter $42,000 to refund Jupiter for the Replicheck Tracks.

On September 18, 2007, Jupiter received an e-mail from one of its customers, Max Langley, notifying Jupiter that a track titled "Young at Heart," which Langley stated was written in 1953 and was not in the public domain, was being sold by Jupiter on one if its jazz albums. This track was purchased from Shapiro under the Agreement under the title "Nostalgic Cocktail Piano." Jupiter was informed of another infringement matter by Jupiter's Atlanta sales team for a Shapiro track titled "Peter and the Wolf." Shapiro, through his counsel, Steven Stein, was notified of these additional infringements via e-mail from Mitchell Eisenberg to Steven Stein on September 28, 2007. Steven Stein responded to this e-mail on September 28, 2007. True copies of these two e-mails are attached hereto as Exhibit H.

On October 25, 2007 all remaining tracks purchased under the Agreement were removed from Jupiter's royaltyfreemusic.com websites; and on October 26, 2007 such tracks were also removed from Jupiter's other websites including but not limited to, bbm.net, studiocutz.com.

V.  **Case Management Plan**

A.  <u>Standing Order on Scheduling in Civil Cases</u>

The parties do request modification of the deadlines in the Standing Order on Schedule in Civil Cases, by allowing for more than the six month period from filing of the complaint for completion of discovery, as set forth in Section 2(d) of the Standing Order on Scheduling in Civil Cases, and related deadlines, because Shapiro did not appear by counsel in this action until December 21, 2007, and it is expected that as many as or more than twenty depositions will be taken in this case.

B.  <u>Scheduling Conference with the Court</u>

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

C.  <u>Early Settlement Conference</u>

1.  The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement may be enhanced by an early settlement conference, which the parties have sought.

2.  The parties do request an early settlement conference.

3.  The parties do not, at present, request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

D.  <u>Joinder of Parties and Amendment of Pleadings</u>

1.  Plaintiff should be allowed until February 29, 2008 to file motions to amend the pleadings.

  2. Defendant should be allowed until March 14, 2008 to file a response to the complaint.

 E. <u>Discovery</u>

  1. The parties anticipate that discovery will be needed on the following subjects:

   A. Shapiro's alleged breaches of the Agreement.

   B. Jupiterimages' alleged damages from Shapiro's breaches

   C. Jupiterimages' actions in response to Shapiro's claimed breaches of the Agreement;

   D. Shapiro's counterclaims

   E. Shapiro's actions in response to Plaintiff's claims that he breached the Agreement.

  2. Discovery will be commenced by February 28, 2008, and all discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be completed by November 30, 2008.

  3. The parties do not, at present, anticipated that discovery will be conducted in phases, however, the parties reserve the right to seek bifurcation of certain issues in the case, in which case, a party or parties may seek to have discovery conducted in phases at some later date.

  4. The parties anticipate that the plaintiff will require a total of more than twenty depositions of fact witnesses and that the defendant will require a total of 6 discovery

depositions of fact witnesses. The depositions will commence by April 15, 2008 and be completed by November 30, 2008.

5. The parties will not request permission to serve more than 25 interrogatories.

6. Plaintiff does intend to call expert witnesses at trial. Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by May 1, 2008. Depositions of any such experts will be completed by September 30, 2008.

7. Defendant intends to call one or more expert witnesses. Defendant will disclose such expert witnesses not later than 60 days following completion of the depositions of plaintiff's expert witnesses. Depositions of defendant's expert witnesses will occur not later than 60 days following their disclosure.

8. A damages analysis will be provided by any party who has a claim or counterclaim for damages by June 15, 2008.

9. Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. Pursuant to Federal Rule of Civil Procedure 26(f)(3), the parties are negotiating an agreement governing the protocol in which electronically stored information will be disclosed. Discovery of electronically stored information will be addressed in the parties' respective discovery requests.

10. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production: A party who produces material or information without intending to waive a claim of privilege does not waive that claim if, within ten days or a shorter time ordered by the court, after the producing party actually discovers that such production was made, the producing party amends its discovery response, identifying the material or information produced and stating the privilege asserted. If the producing party thus amends the response to assert a privilege, the requesting party must promptly return the specified material or information and any copies pending any ruling by the court denying the privilege. The party returning claimed privileged material may seek an order from the Court permitting that party to file with the court, for in camera inspection, a copy of the material being returned.

G. **Dispositive Motions**

Dispositive motions will be filed on or before December 31, 2008.

H.  Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by February 1, 2009.

VI. TRIAL READINESS

The case will be ready for trial by March 1, 2009.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Jupiterimages Corporation, Plaintiff

By: *[signature]*  Date: 2/19/08
Stewart I. Edelstein
Fed. Bar No. ct06021
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
203 368-0211


Steve Shapiro, d/b/a Steve Shapiro Music, Defendant

By: *[signature]*  Date: 2/19/08
Stuart C. Johnson
Fed. Bar No. ct20277
Carmody & Torrance, LLP
195 Church Street, 18th Floor
New Haven, CT 06509
203 777-5501